## Case No. 15,070.

### UNITED STATES v. FARMERS' LOAN & TRUST CO.

[3 Int. Rev. Rec. 62.]

Circuit Court, S. D. New York.   Feb., 1866.

INTERNAL REVENUE — BANKS — LOAN AND TRUST COMPANIES.

[1. A loan and trust company which issues certificates of deposit and makes loans on stocks, bonds, and other securities, is subject to the payment of the license fee imposed by Act 1864, § 79, cl. 1.]

[2. Such company is "engaged in the business of banking," so as to be liable for the payment of a duty of one twenty-fourth of one per centum each month upon the average amount of its deposits, as provided by section 110 of said act.]

This case involved the important question to the government in the way of revenue, whether loan and trust companies were subject to the tax imposed by the act of congress of June, 1864 [13 Stat. 223], and as amended by the subsequent act of March, 1865 [Id. 469], which provides that banks shall pay a license, &c.; that every person, firm, or company, and every incorporated or other bank having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check, or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange or promissory notes, &c., shall be regarded a banker under this act.

SHIPMAN, District Judge. The defendants in this case are a corporation created by the legislature of the state of New York, and have an office or place of business in this city. Certain questions having arisen touching their liability to take out a license as bankers, and pay a monthly tax on their deposits and capital, an agreed statement of facts has been submitted to this court and its judgment invoked on the points in dispute. The charter of the company is made part of the agreed statement. The charter was granted in perpetuity, and created the corporation originally under the name of the "Farmers' Fire Insurance & Loan Company," with the power to loan money and insure property, as well as for some other purposes set forth in their charter. This charter (originally granted in 1822) was subsequently and at different times modified and amended by the legislature. It is not deemed necessary to refer specifically to its provisions here, inasmuch as the nature of the business of the company, and the manner in which it is transacted, must determine the questions affecting its liability under the internal revenue law. The agreed statement of facts sufficiently set forth, in terms, both the nature of the business and the manner in which it is conducted, and the act of congress has prescribed the rule by which the court must determine the extent to which the company

is liable under our new system of taxation.

The first question to be settled is whether or not the defendants are bankers within the meaning of the internal revenue act. It is immaterial to the present inquiry whether or not they are bankers in the general popular or commercial sense. Congress in this act have seen fit to use the term banker in a specific sense, and have set forth in express language the rule by which we are to determine what that sense is. The clause of the act which relates to this point is the first part of the seventy-ninth section, which requires the payment of a license fee by those engaged in particular kinds of business. After providing that bankers shall pay such fee in proportion to their capital, as specified, the act proceeds to declare who should be deemed a banker within the meaning of the law, as follows: "Every person, firm, or company, and every incorporated bank having a place of business where credits are opened by the deposit or collection of money or currency, subject to be paid or remitted upon draft, check or order, or where money is advanced or loaned on stocks, bonds, bullion, bills of exchange or promissory notes are received for discount or sale, shall be regarded a banker under this act." This language is explicit, and for the purpose of ascertaining whether a given person or corporation is to be deemed a banker or not under this act it is only necessary to determine whether the business transacted by such person or company comes under any of the different branches of business described in the clause cited. In the present case the agreed statement of facts sets forth that the defendants are a corporation with a capital of $1,000,-000, that this capital and a part of their deposits are invested permanently on bond and mortgage, government securities, and other stock securities. That their principal business is as trustee and receiver under their charter, and in those capacities they receive and keep the books of registry and transfer of various railroads and other corporations, and act as trustees in railroad mortgages and other fiduciary capacities. That they pay the interest and dividends in the matters in which they act as trustees to the parties entitled to the same by their checks on banks in which they keep their deposits. As a part of their general business the defendants receive money in trust under special contract for specified times and upon an agreed rate of interest to be allowed therefor, and in all cases give to the depositor a contract or certificate as follows: "New York,——, 18—. No. ——. This certifies that the Farmers' Loan and Trust Company have received of —— the sum of —— in trust; that said company will retain the same and allow interest thereon, at the annual rate of — per cent. for the term of —— from the date of this certificate, and at the expiration of that period will repay the same, with the interest accrued thereon, to the said——, or as-

signs, on the presentation of this certificate. ——, President."

It is also agreed that "the daily average amount of its deposits on hand for which contracts are outstanding varies from $200,-000 to $500,000" and that "some part of these sums is loaned out by the defendants, as occasion offers, on stocks, bonds, and other securities." The agreed statement further declares, "that the defendants do not open credits by the deposit or collection of money, subject to be paid or remitted upon draft, check, or order, and do not discount or loan money upon bills of exchange or promissory notes." This last clause of the agreed statement merely goes to show that the defendants are not bankers in the ordinary commercial sense of that term; and had the act of congress used the term banker, and left its definition to the law merchant, the defendants would not have been included within the act. Both the agreed statement and the argument of the defendants would have been conclusive on that point. But the clause of the act cited declares that "every person, firm, or company * * * having a place of business, * * * where money is advanced or loaned on * * * stocks (or) bonds, * * * shall be regarded as a banker under this act." There is no room for official construction here. The language is so explicit, that I am bound to assume that congress intended its effect should be direct and precise. Its operation may be harsh upon these defendants, but this is a difficulty from which they can be relieved only by the power which enacted the law. Now, the agreed statement, while it shows that they are not bankers under the ordinary commercial understanding of the term, explicitly states that they have a place of business, where they, among other pecuniary transactions, loan money, as occasion offers, "on stocks, bonds, and other securities." Thus they are brought directly within the descriptive term of the law, and belong to that class of companies which congress declares shall be regarded as bankers under the act in question. They are bound, therefore, to take out a license as bankers, and pay such fees therefor as the act prescribes.

The other question is, whether the defendants are required to pay a tax on their deposits and capital under the 110th section of the same act. The first part of the section covers this point, and is as follows: "There shall be levied, collected, and paid a duty of one twenty-fourth of one per centum each month upon the average amount of the deposits of money subject to payment by check or draft or represented by certificate of deposit or otherwise, whether payable on demand or at some future day, with any person, bank, association, company, or corporation engaged in the business of banking; and a duty of one twenty-fourth of one per centum each month as aforesaid, upon the average amount of capital of any bank, associa-

tion, company, or corporation, or person engaged in the business of banking, beyond the amount invested in United States bonds." Here the argument of the defendants is met by the same insuperable difficulty. Congress having given. an arbitrary meaning to the word banker as used in this act, it follows in strict logical sequence that they have extended the same meaning to the terms "business of banking." The act would be no more explicit if it had said that any person or company having a place of business where money is advanced or loaned on stocks or bonds, shall be deemed and regarded under this act to be engaged in the banking business. The agreed statement of facts brings the defendants directly within the plain letter of the law, while the law itself restricts and applies the letter, by descriptive terms, which excludes all doubts as to the sense in which it is used, and leaves no room whatever for the court to resort to the ordinary rules of definition or construction. The defendants have large deposits, which are represented by approved certificates, payable at some future day. They have a large capital, some portion or all of which is employed in what congress says shall be regarded as the business of banking under this act. And I see no way in which, so long as this act stands, they can be relieved from the prescribed duty on both. Judgment must, therefore, be rendered for the plaintiffs, subject to adjustment under a referee, as contemplated by the parties in their agreed statement of facts, submitted to this court, reserving all their rights touching an appeal or suit of error for the purpose of revising this decision.